NOT DESIGNATED FOR PUBLICATION

No. 127,073

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY DEWAYNE ADKINS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; CURTIS SAMPLE, magistrate judge. Oral argument held March 11, 2025. Opinion filed March 21, 2025. Affirmed.

*David S. Patrzykont*, of David S. Patrzykont, Attorney at Law, P.A., of Kansas City, for appellant.

*Maria C. Davies*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before MALONE, P.J., SCHROEDER and CLINE, JJ.


PER CURIAM: A jury convicted Anthony Dewayne Adkins of sexual battery, a domestic violence offense. On appeal, Adkins contends the prosecutor erred by using a puzzle analogy during voir dire while describing the State's burden of proof and then discussing the presumption of innocence. Adkins claims this error prejudiced him from receiving a fair trial and, as a result, his jury verdict should be reversed and his case remanded for a new trial. The State concedes the prosecutor's use of the puzzle analogy

1

was an error. But it argues in light of the entire trial record, this error did not prejudice Adkins from receiving a fair trial.

We agree. A review of the record reveals no reasonable possibility that this error contributed to the jury's verdict. The jury was properly instructed on the State's burden of proof, and we do not believe the prosecutor's comment in voir dire ultimately impacted how they viewed the evidence in this case.

We therefore affirm Adkins' conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

The State charged Adkins with sexual battery, which is a domestic violence offense, after his ex-girlfriend, C.T., reported he physically and sexually assaulted her.

Adkins had a one-day jury trial. During voir dire, the prosecutor used a jigsaw puzzle analogy in an attempt to explain the reasonable doubt standard:

> "[Prosecutor]: So that's the criminal justice standard for all criminal cases. So all cases in this country from speeding tickets in California to capital cases in Texas all use the beyond a reasonable doubt standard. That's not the only standard in the criminal justice system. There are others. There's probable cause, preponderance. It's just a sliding scale from maybe that happened to beyond a reasonable doubt.
>
> "Unfortunately, the courts and the legislature do not define what reasonable doubt is. So I cannot give you a definition of reasonable doubt. It's something, you're going to have to look at yourself and decide: Hey, is this a reasonable doubt or not?
>
> "What I can tell you is it's the highest burden in the criminal justice system. It's higher than the start of a case to arrest someone, and in the criminal system we must convict beyond a reasonable doubt.

"There's also an additional standard that is not in the criminal justice system that you can consider, and that is beyond all doubt. That is not the State's burden today. The State's burden is beyond a reasonable doubt.

"Can you all find and hold the State to the burden of beyond a reasonable doubt? Raise your hand if you can. I see all hands.

"Does anyone like puzzles? Does anyone like jigsaw puzzles in particular? Okay.

"Juror No. 7, is it Ms. [last name omitted]?

"PROSPECTIVE JUROR NO. 7: Yes.

"[Prosecutor]: Do you like puzzles?

"PROSPECTIVE JUROR NO. 7: Yeah.

"[Prosecutor]: Yeah, I hate them. I'm not a fan of them. My wife is though. So I'm so frustrated and I try to work with her, and it's very frustrating for me. We have one of those world maps that you put it on there, roll it up so it can't get messed up again.

"How do you do puzzles?

"PROSPECTIVE JUROR NO. 7: Edges first.

"[Prosecutor]: Edges first, and then build them from there?

"PROSPECTIVE JUROR NO. 7: Yes.

"[Prosecutor]: Does anyone do them differently? Okay. Ms. [last name omitted], Juror No. 1. You do them differently?

"PROSPECTIVE JUROR NO. 1: They are similar, and you see what's similar, you move around.

"[Prosecutor]: I might try that, and I've always done the edges first, and it's not my cup of tea.

"If I was to give you a puzzle that was a one dollar bill, so everyone on the jury has seen a dollar? You're not exposed to a cashless society yet. Everyone is nodding their heads.

"If I was to give you a one dollar puzzle, and you don't have the picture on the box that I used to cheat when building them, and so you start assembly from the ones and the edges and then build it out. Is there some point you can decide this is a one dollar bill before every piece is in place? So you can say beyond a reasonable doubt, that puzzle is a one dollar bill even if every piece isn't there? It's not beyond all doubt, but beyond reasonable doubt."

Adkins' counsel did not object, and the district court did not intervene. The State called two witnesses at trial: one of the responding officers, Megan Brown, and C.T.

Officer Brown explained she had been dispatched to a report of a domestic disturbance. She then recounted her separate interviews of C.T. and Adkins. C.T. told Officer Brown she had woken up to Adkins touching her with his hands in her pants. Adkins told Officer Brown he believed another man had been in bed with C.T. After the man left, Adkins said he climbed into bed with C.T., put his hand in C.T.'s pants, and caressed her hips and thigh area. Adkins said C.T. liked him touching her until she discovered it was Adkins and not the other man, then she got upset. The State admitted Officer Brown's body camera footage into evidence and played it for the jury. This footage showed Officer Brown's conversations with both C.T. and Adkins.

C.T. told the jury she and Adkins lived together and had been in a dating relationship off and on for about a year but had recently broken up. C.T. had tried to get Adkins to move out but he had refused, and things had become contentious between them. She explained that she went to bed the night before around 10:30 p.m., and around 2 or 3 in the morning, she woke up to Adkins reaching his fingers into her underwear and penetrating her vagina. At that point, Adkins screamed, "'I knew it. You were having sex with a man on the floor right there.'" C.T. described the penetration as Adkins forcefully using "his fingers to inspect [her] vagina." C.T. testified that she was confused and angry. She recalled that Adkins was convinced there was a person on the floor whom she was intimate with, but she said that was physically impossible because she had already been asleep for hours. C.T. confirmed that at no point did she give Adkins permission to touch her. She believed that Adkins actions were not done to arouse her, but that "he seemed very satisfied with himself" afterwards. She then called 911.

On cross-examination, Adkins' counsel challenged C.T. about her previous statement to the police, confirming C.T. told them there was no penetration. C.T.

4

admitted telling that to the police but claimed she had edited her statement at Adkin's request because he did not want to go to jail. Adkins' counsel pressed further and asked C.T. about how she described the incident as "'[j]ust a wipe'" originally to the police. C.T. responded, "His fingers still injured my vagina, and that's very possible with even a wipe."

Adkins testified after the State rested. He admitted touching C.T. on "the side of her leg actually pulling her pants up." He denied touching C.T. for his arousal of sexual desires or in preparation for sexual activity. But he admitted C.T. was asleep when the touching occurred and she did not consent.

Adkins explained that he and C.T. had "an unspoken rule" of "no sex after ten o'clock." He even clarified that C.T. "was not a fan of any sexual activity, or any intimacy after ten o'clock because of her schedule." On cross-examination, the State asked if Adkins remembered what he told the police. And he admitted the body camera footage accurately depicted his statements. He confirmed that he remembered using the word "'caressing'" to describe how he touched C.T. and that he would say it was caressing "in a non-aggressive way." Adkins confirmed that even though he and C.T. had broken up, they sometimes slept together and sometimes slept in different rooms. He claimed there "was a lot of gaslighting on her behalf," and he was "going to stick to the story, I mean, the facts but, yes, there's a lot of gaslighting on her end."

During deliberations, the jury submitted a question to the court. The jury asked whether the word "'touching'" mattered in relation to what part of the body that was touched. The court gave both parties the opportunity to explain how this question should be answered, but it ultimately told the jury, "You have the instructions and any definitions provided to you, and you must use them in arriving at your verdict." Neither party objected to this response to the jury's question.

After further deliberation, the jury found Adkins guilty of sexual battery. The district court ordered Adkins to serve 14 days in custody, but it also granted him probation of 12 months with an underlying prison sentence of 12 months. Adkins timely appealed his conviction.

REVIEW OF ADKINS' APPELLATE CHALLENGE

Adkins contends the State committed prosecutorial error by using a puzzle analogy to explain the reasonable doubt standard during voir dire. Adkins maintains this error prejudiced him by preventing him from receiving a fair trial. While the State agrees the prosecutor's puzzle analogy was an error, it disagrees that this error prejudiced Adkins. The State characterizes this as harmless error because there is no reasonable possibility the error contributed to the trial outcome.

Kansas appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). Here, Adkins did not object when the prosecutor made the puzzle analogy.

Kansas appellate courts use a two-step process to evaluate claims of prosecutorial error: (1) was there error and (2) was it prejudicial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). In evaluating prejudice, we find prosecutorial error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

Our Supreme Court has noted jigsaw puzzle analogies, like the one here, "are inappropriate because they foster the illusion that the jurors already know the full picture of the case they are hearing and are simply looking for pieces of evidence to match it." *Sherman*, 305 Kan. at 116. Since the State concedes the prosecutor's use of the puzzle analogy in voir dire was an error, the only issue before us is whether that error prejudiced Adkins' right to a fair trial.

According to Adkins, the jury was confused about what standard it had to apply to the evidence. He contends the jury's clarifying question during deliberations shows that the prosecutor's puzzle analogy confused the jury. And he claims the State cannot show the error did not prejudice the verdict since this was a "he said, she said" case lacking physical or other testimonial evidence, so the jury was left to sort through testimonial statements and decide whether it believed C.T.'s version of the events.

We disagree. As the State notes, right after its use of the puzzle analogy in voir dire, the State reminded potential jurors that Adkins was presumed innocent and if they were to deliberate that very moment, they would have to find him not guilty. Further, the prosecutor and Adkins' trial counsel said the jury must apply the "beyond a reasonable doubt" standard several times after the puzzle analogy was mentioned. The district court also repeated this standard in the jury instructions, which were read aloud. Given this repetition, we do not find a reasonable possibility that the jury remained confused about which standard applied.

The State also highlights other comments by and instructions from the district court which protected the jury against any potential harm resulting from the State's puzzle analogy. For instance, the court told the jury after voir dire and in the jury instructions:

> "You may consider the testimony of the witnesses who testify, any article or document which is admitted into evidence, and any admission or stipulation which is admitted.

7

Remarks and statements of the attorneys are there to help you understand the evidence and apply the law to that evidence, but they are not themselves evidence."

And it provided instructions defining the jury's role, which included a reminder that the jury must decide the case by applying the instructions provided to the facts as the jury finds them. Our Supreme Court has explained that we may consider the district court's jury instructions and the strength of the evidence against the defendant in determining whether any prosecutorial error is harmless. *State v. Barnes*, 320 Kan. 147, 163, 563 P.3d 1255 (2025). Here, we find it significant that the prosecutor's comments were stated in a few short sentences and tempered by other statements which reminded the jury of the proper standard and that the prosecutor used the puzzle analogy in voir dire rather than in closing. See *Sherman*, 305 Kan. at 96. Given the procedural remoteness of the statement to the jury's deliberations, we find it even less reasonable to believe the prosecutor's error impacted the jury's verdict.

We presume the jury followed the instructions it was given rather than the prosecutor's statement in voir dire. See *State v. Gray*, 311 Kan. 164, Syl. ¶ 2, 459 P.3d 165 (2020) ("Kansas courts presume jury members follow instructions."). And we find the jury's question had more to do with the evidence rather than the standard it was to apply to that evidence.

Considering the record as a whole, we find it unreasonable to conclude the prosecutor's one statement in voir dire was not sufficiently corrected by the other statements by the prosecutor, Adkins' attorney, and the district court, as well as the jury instructions. We therefore find there is no reasonable possibility that the State's use of the puzzle analogy in voir dire misdirected the jury about the proper standard it was to apply to the evidence before finding Adkins guilty.

Affirmed.

8